UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DEIHL,

       Plaintiff,                                        Hon. Wendell A. Miles

v.                                                     Case No. 1:07-CV-149

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 34 years of age at the time of the ALJ's decision.  (Tr. 19, 39).  He completed the tenth grade and worked previously as a construction worker.  (Tr. 53, 58, 96-97).

Plaintiff applied for benefits on December 4, 2003, alleging that he had been disabled since June 15, 2003, due to a pinched nerve in his back and an "attitude problem."  (Tr. 39-41, 52, 165).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 22-38).  On February 8, 2006, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff and vocational expert, Sandra Steele.  (Tr. 452-80).  In a written decision dated June 26, 2006, the ALJ determined that Plaintiff was not disabled.  (Tr. 12-19).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 5-8).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2003.  (Tr. 12).  Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status.  *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## MEDICAL HISTORY

On May 13, 2002, Plaintiff was examined by Dr. David Park. (Tr. 155). Plaintiff reported that he was experiencing "some mood changes" with "racing thoughts and talkative tendencies." He reported "getting very angry with angry outbursts." Plaintiff also reported experiencing "some low back pains." The doctor reported that Plaintiff exhibited "mild" psychomotor agitation and was "fairly tense and anxious." The results of the examination were otherwise unremarkable. Plaintiff was prescribed various medications. *Id.*

On June 4, 2002, Plaintiff was examined by Dr. Park. (Tr. 153). Plaintiff reported that since taking his prescribed medication he was "feeling much improved overall and less anxious and moody." He also requested that his medication dosage be increased because he still "gets mildly edgy at times." The doctor increased Plaintiff's dosage of Paxil. Dr. Park reported that Plaintiff's condition was "improved" and recommended to Plaintiff that he participate in counseling. *Id.*

X-rays of Plaintiff's thoracic spine, taken on March 26, 2003, revealed that the lumbar vertebral bodies were "intact" and that the disc spaces were "normal." (Tr. 142). There was also "no evidence of fracture or dislocation." *Id.*

On December 8, 2003, Plaintiff was examined by Dr. Scott Stryd. (Tr. 145). Plaintiff reported that he was experiencing low back pain. Straight leg raising was negative and there was no evidence of strength or sensory limitation. *Id.*

In a report dated December 29, 2003, Plaintiff's wife described Plaintiff's hobbies as "movies, pool, play games, sports, darts [and] bar." (Tr. 92). She further reported that Plaintiff engaged in these activities twice weekly. *Id.*

On January 15, 2004, Plaintiff participated in a consultive examination conducted by Timothy Strang, Ph.D. (Tr. 165-68). Plaintiff reported that he was disabled due to a pinched nerve in his back, a learning disability, and an "attitude problem." (Tr. 165). With respect to his back, Plaintiff reported that he experienced "chronic pain" and that if he lifts "anything" his back "will hurt all day long." Plaintiff described his temper as "really bad" and reported that his medication was "ineffective." Plaintiff reported that he only "sometimes" experienced depression. *Id.*

Plaintiff reported that he enjoys woodworking, tattooing, constructing models, and attending car races. (Tr. 166). He further reported that he cares for his child and takes care of his dog. *Id.* The results of a mental status examination were unremarkable. (Tr. 166-68). Dr. Strang diagnosed Plaintiff with bipolar disorder and nicotine dependence. (Tr. 168). Plaintiff's GAF score was rated as 54.[1] *Id.*

On January 27, 2004, Dr. John Pai completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 170-84). Determining that Plaintiff suffered from a learning disability, bi-polar disorder, and anti-social personality disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Sections 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.08 (Personality Disorders) of the Listing of Impairments. (Tr. 171-79). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular impairments. (Tr. 180). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning,

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 54 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

mild difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.*

Dr. Pai also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 185-87). Plaintiff's abilities were characterized as "moderately limited" in six categories. With respect to the remaining 14 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.*

On March 8, 2004, Plaintiff was examined at Summit Pointe Behavioral Health Resources. (Tr. 347-54). Plaintiff reported that he was seeking treatment because "it don't take too much to tick me off" and "sometimes I want to rip people's head off." (Tr. 348). Plaintiff reported that he enjoyed repairing cars, woodworking, creating tattoos, and playing video games. (Tr. 350). The results of a mental status examination were unremarkable. (Tr. 352). Plaintiff was diagnosed with intermittent explosive disorder and his GAF score was rated as 55. (Tr. 353).

Treatment notes, dated June 22, 2004, reveal that Plaintiff was "doing better" and "has made significant progress toward managing his anger." (Tr. 331).

On October 25, 2004, Plaintiff fell off a roof, suffering a "severely comminuted" fracture of his right femur. (Tr. 317). Later that day, Plaintiff underwent surgery, performed by Dr. Robert Thomas, to insert a rod in his right femur. (Tr. 319-20). The following day, Dr. Thomas reported that Plaintiff was "doing very well" and "has even ambulated short distances with toe-touch weight-bearing." (Tr. 320). Plaintiff was discharged home later that day. *Id.*

On November 2, 2004, Plaintiff was examined by Dr. Thomas. (Tr. 314). Plaintiff demonstrated "markedly improved" dorsiflexion of his right foot. X-rays of Plaintiff's right leg revealed that the rod in his femur was "in place and in good position." *Id.*

Plaintiff stopped attending therapy at Summit Pointe in November 2004. (Tr. 323). Plaintiff's discharge summary indicates that he "made considerable progress toward reducing his outbursts of anger and has greatly reduced his level of stress." Plaintiff's condition was characterized as "much improved." *Id.*

A November 30, 2004 examination revealed that Plaintiff's right leg was "stable" and in "good condition." (Tr. 313). X-rays further revealed that "the rod was in good position." Plaintiff was instructed to "continue toe-touch weightbearing at least for another month," after which he could begin physical therapy. *Id.* A December 27, 2004 examination revealed that Plaintiff was doing "fairly well." (Tr. 311). When examined on January 25, 2005, Plaintiff reported that he was able to engage in "partial weightbearing with the use of crutches." (Tr. 308). Plaintiff also reported that "he has had less pain" since beginning physical therapy. *Id.*

On February 28, 2005, Plaintiff was examined by Dr. Thomas. (Tr. 305). Plaintiff reported that he was "making improvements in strength and is very pleased with his results." An examination of Plaintiff's right leg revealed no evidence of swelling and Plaintiff exhibited 4/5 strength. The doctor reported that Plaintiff would be able to return to "full duty" employment on April 1, 2005. *Id.*

Physical therapy treatment notes, dated March 14, 2005, reveal that Plaintiff reported his thigh pain as 0 (on a scale of 0-10, with 10 being the worst) "at rest" and 2 "with activity." (Tr. 304). Plaintiff also reported his knee pain as 0 "at rest" and 1 "with activity." *Id.*

7

On March 29, 2006, Plaintiff was examined by Dr. Thomas. (Tr. 303). Plaintiff reported that he was "doing fairly well." X-rays of Plaintiff's right leg revealed "good callous formation." Plaintiff reported that he wanted to return to work driving a wrecking truck. Dr. Thomas reported that Plaintiff "has enough stability and healing of the fracture to return to" that type of work. Plaintiff was instructed to return in three months for a follow-up examination. *Id.*

On June 26, 2005, Plaintiff reported that "he has been working 5-7 days a week setting mobile homes and roofing." (Tr. 301). Plaintiff reported that he was able to perform this work without complaint or regular medication. An examination of Plaintiff's right leg was unremarkable and x-rays revealed "excellent callus formation, excellent alignment of the fracture site and no complications with the hardware." Plaintiff was instructed to "continue strengthening without any repetitive pounding activities." *Id.*

On January 24, 2006, Dr. Thomas completed a "Medical Source Statement" regarding Plaintiff's "Ability to Engage in Work Related Activities." (Tr. 293-96). The doctor reported that Plaintiff experiences only a "slight limitation" in the "ability to deal with work stress." (Tr. 294). Dr. Thomas reported that Plaintiff can walk "4-5 or more" city blocks without rest. He further reported that during an 8-hour workday, Plaintiff can sit for "at least 6 hours" and stand/walk for "about 4 hours." *Id.* The doctor reported that Plaintiff can frequently lift and carry 20 pounds and occasionally lift and carry 50 pounds. (Tr. 295). Finally, the doctor reported that Plaintiff does not require a sit/stand option and experiences no significant limitations in his ability to perform repetitive reaching, handling, or fingering activities. (Tr. 294-95).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) bipolar disorder; (2) anti-social personality disorder; (3) learning disability; (4) chronic obstructive pulmonary disease; and (5) post right leg fracture. (Tr. 14). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

9

404, Subpart P, Appendix 1. (Tr. 15-16). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 18-19). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, he can sit and stand/walk for six hours each; (3) he cannot use ladders, scaffolds, or ropes; (4) he can only occasionally stoop, crouch, kneel, crawl, or use ramps and stairs; (5) he can never use

pneumatic, torque, or power tools; (6) he can perform simple, unskilled work; (7) he can perform work that involves minimal contact and directions from a supervisor; (8) he can perform routine work that does not require changes or adaptations in work settings or duties more than once per month; (9) he can perform work that requires only brief and superficial contact with the general public; (10) he can perform jobs without production quotas mandating a specific number of pieces per hour or with a down line co-worker depending on his productivity; and (11) he cannot perform jobs that require him to read or write. (Tr. 16). The ALJ further determined that Plaintiff experiences mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.* After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt

to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sandra Steele.

The vocational expert testified that there existed approximately 29,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 472-76). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

        a.    The ALJ Properly Discounted Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that he is unable to work because of his "temper problem," hand cramps, back pain, and that he has the "lungs of a 90-year-old man." (Tr. 461-62). The ALJ discounted Plaintiff's subjective allegations, finding such to be "not entirely credible." (Tr. 17). Plaintiff asserts that the ALJ improperly discounted his subjective allegations and that such allegations demonstrate that he is disabled.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has

12

established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must

stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The Court does not dispute that Plaintiff suffers from severe impairments which impose upon him a certain degree of limitation. Nonetheless, the ALJ properly discounted Plaintiff's subjective allegations of disabling pain and limitation. Plaintiff alleges that his "temper problem" is disabling in severity. The medical record, however, reveals that Plaintiff responded very favorably to counseling.

The record likewise refutes Plaintiff's assertion that he suffers from disabling back pain. At the administrative hearing, Plaintiff testified that on a scale of 1-10 (with 10 being the most severe) his back pain rated "about a three." (Tr. 463-64). Plaintiff also testified that he could lift 25-50 pounds, continuously stand for 2-4 hours, continuously sit for 5-6 hours, and walk 2-3 blocks. (Tr. 469). The medical record contains no indication that Plaintiff suffers from disabling back pain. Furthermore, aside from the brief time period following his broken leg, none of Plaintiff's care providers have ever imposed on Plaintiff limitations which are inconsistent with the ALJ's RFC determination.

Plaintiff's assertion that he suffers from a disabling pulmonary impairment is not supported by the medical record, nor is Plaintiff's claim that he experiences disabling hand cramps. Plaintiff's subjective allegations are also contradicted by his reported activities. In sum, there exists substantial evidence to support the ALJ's credibility determination.

b.  The ALJ Properly Evaluated the Medical Evidence

As discussed above, on January 24, 2006, Dr. Thomas completed a report regarding Plaintiff's ability to perform work-related activities. (Tr. 293-96). According to the doctor, Plaintiff experiences only a "slight limitation" in the "ability to deal with work stress." (Tr. 294). The doctor reported that Plaintiff can walk "4-5 or more" city blocks without rest and, moreover, during an 8-hour workday can sit for "at least 6 hours" and stand/walk for "about 4 hours." *Id.* Dr. Thomas reported that Plaintiff can frequently lift and carry 20 pounds and occasionally lift and carry 50 pounds. (Tr. 295). Finally, the doctor reported that Plaintiff does not require a sit/stand option and experiences no significant limitations in his ability to perform repetitive reaching, handling, or fingering activities. (Tr. 294-95).

Dr. Thomas also reported that Plaintiff's "experience of pain or other symptoms" will "constantly" interfere with his "attention and concentration." (Tr. 294). The doctor further reported that 2-3 times each day Plaintiff will need to take unscheduled breaks of 10-15 minutes duration. (Tr. 295). The ALJ rejected these particular aspects of Dr. Thomas' report, however, finding that such were neither "explained by Dr. Thomas' reports or supported by the record as a whole." Plaintiff asserts that because Dr. Thomas was his treating physician, the ALJ was required to accord controlling weight to these portions of Dr. Thomas' report.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such

opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

First, even assuming that Plaintiff's symptoms "constantly" interfere with his attention and concentration (a matter not supported by the record), the ALJ sufficiently accounted for such in his RFC determination. As for the doctor's opinion that Plaintiff will be required to take 2-3 unscheduled breaks each day, the ALJ correctly concluded that the medical evidence fails to support such a limitation. Dr. Thomas' contemporaneous treatment notes neither mention nor support such a limitation. The remainder of the medical record likewise fails to support such a limitation. In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to these aspects of Dr. Thomas' report.

c. The ALJ properly assessed Plaintiff's Non-Exertional Limitations

Plaintiff asserts that because he suffers "a substantial loss of ability to meet any of the basic mental demands of unskilled work," he must be found disabled. The Court disagrees. The record does not support the conclusion that Plaintiff suffers such non-exertional limitations. To the

contrary, the record reveals that Plaintiff responded favorably to treatment.  Plaintiff's reported activities are also inconsistent with this allegation.

Furthermore, Plaintiff's reliance on Dr. Pai's January 27, 2004 report is misplaced. The doctor did not find that Plaintiff experienced "a substantial loss" in any of the areas evaluated. As noted above, Dr. Pai evaluated Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation.  (Tr. 185-87).  Plaintiff's abilities were characterized as "moderately limited" in six categories.  With respect to the remaining 14 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.*  The Court is not persuaded that "moderately limited" equates to a disabling loss of ability.  Furthermore, as the Sixth Circuit has indicated, the ALJ is not bound by the results of a check-box report, such as that completed by Dr. Pai, but must instead evaluate the entire record to determine Plaintiff's limitations.  *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ did evaluate the entire record and his conclusions regarding Plaintiff's non-exertional limitations are supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  January 10, 2008                                          /s/ Ellen S. Carmody
                                                                           ELLEN S. CARMODY
                                                                           United States Magistrate Judge