UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
| --- | --- |
| MICHAEL DEIHL, | Case No. 1:07-cv-149 |
| Plaintiff, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Carmody |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

---

### Overruling the Plaintiff's Objection and Adopting the R&R; Affirming the Commissioner's Denial of Disability Benefits; Terminating the Case

This matter was referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, for a Report and Recommendation ("R&R").

Title 28 U.S.C. § 636(b)(1) provides, "Within ten days after being served with a copy [of an R&R], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." Likewise, Federal Rule of Civil Procedure 72 provides that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." *See Deruso v. City of Detroit*, 121 F. App'x 64, 66 n.2 (6th Cir. 2005) ("The Rule requires parties to file objections to a magistrate's report and recommendation within ten days of the time the report is filed.") (citing FED. R. CIV. P. 72(a)); *Rodger v. White*, No. 89-5720, 907 F.2d 151, 1990 WL 95624, at *2 (6th Cir. July 11, 1990) ("Ordinarily, parties must file objections and exceptions to the magistrate's report within ten days of its issuance.") (citing 28 U.S.C. § 636(b)(1)).

The Clerk's Office docket records indicate that the R&R issued on Thursday, January 10,

2008 was electronically served on counsel for both parties on that date.

Federal Rule of Civil Procedure 6 begins, "In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included." FED. R. CIV. P. 6(a). Thus, the ten-day objection period began on Friday, January 11, 2008. Rule 6 further provides, "When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." FED. R. CIV. P. 6(a). Thus the court excludes Saturday, January 12, Sunday, January 13, Saturday, January 19, Sunday, January 20, and Monday, January 21 (a federal holiday).

Thus, the ten-day period for filing objections expired at midnight on Friday, January 25, 2008, so the court finds that Deihl's Objection document, filed on January 20, was timely.[1] As discussed below, however, the court also finds that two of Deihl's three objections are not sufficiently specific and supported to trigger *de novo* review of the portions of the R&R which they purport to challenge.

The court finds the R&R to be well-reasoned and overrules the plaintiff's objections. For the reasons explained by the R&R, substantial evidence supported ALJ Blair's determination that Deihl's severe impairments (bipolar disorder, anti-social personality disorder, a learning disability,

---

[1]

The Commissioner did not file a response to Deihl's objections, and the time for him to do so has expired. *See* W.D. MICH. L.CIV.R. 72.3(a) ("Appeal of Nondispositive Matters - 28 U.S.C. § 636(b)(1). * * * Any party may respond to another party's objections within fourteen days of service."); W.D. MICH. L.CIV.R. 72.3(b) ("Review of Case-Dispositive Motions and Prisoner Litigation - 28 U.S.C. § 636(b)(1)(B). * * * Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.").

chronic obstructive pulmonary disease[2], and a prior leg fracture) did not render him disabled between his alleged disability-onset date (June 15, 2003) and his date last insured (December 31, 2003), during which period he was about 31 years old.

Specifically, substantial evidence supported the ALJ's resultant conclusion that Deihl experienced only mild restrictions in the activities of daily living, moderate difficulties in social functioning, and mild difficulties in concentration, persistence and pace, and that he never experienced episodes of "decompensation." In turn, substantial evidence supported the ALJ's resultant determination that Deihl retained the functional capacity to (1) lift or carry 20 pounds occasionally or 10 pounds frequently, (2) sit or stand for six hours each during an eight-hour workday, but not to (3) use ladders, scaffolds, or ropes, (4) stoop, crouch, kneel, crawl, or use ramps and stairs more than occasionally, (5) use pneumatic, torque, or power tools, (6) work with more than minimal contact and directions from a supervisor, (7) perform more than simple, unskilled work, (8) perform work that requires changes in work settings or duties more than once monthly, (9) have more than brief, superficial contact with the general public, (10) cope with production quotas mandating a specific number of pieces per hour or with a co-worker "down the line" depending on his productivity, or (11) doing work that requires reading and writing.

Deihl asserts three purported objections to the R&R. With one minor exception, the first objection is conclusory and will be rejected on that ground without review. Deihl's first objection

---

2

COPD is a general term used for diseases that entail the permanent or temporary narrowing of small bronchi (the subdivisions of the trachea which are used to convey air to and from the lungs), which slows forced expiratory flow. STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006) at 554 (chronic obstructive pulmonary disorder) and 271 (bronchus) and 269 (bronchi). The term COPD is used "especially when no etiologic [causal] or other more specific term can be applied." *Id.* at 554.

reads, in its entirety:

> a.      The ALJ Improperly Discounted Plaintiff's Subjective Allegations
>
> Plaintiff bore his burden of proof throughout the administrative process.  He proved that he had not engaged in substantial gainful activity from his AOD [alleged onset date] until the hearing.  He proved that he suffered from several severe impairments (bipolar disorder, antisocial personality disorder, learning disability, chronic obstructive pulmonary disease, and post right leg fracture) and that meant that they seriously interfered with his ability to perform work activities, physical and mental.
>
> Mr. Deihl also proved that he was unable to perform his past relevant work.  The failure in proof was that the SSA failed to prove that Plaintiff could make an adjustment to perform other work that existed in significant numbers in the regional economy.  Had the ALJ found Mr. Deihl to be credible he would have been disabled according to the vocational expert.  *The ALJ's reasons for rejecting the Plaintiff's testimony as to his limitations are fully explored in his [Deihl's?] brief and should be persuasive that the ALJ improperly assessed Plaintiff's credibility.*  His testimony as to limitations are [sic] supported by his wife's statement which are not rejected by the ALJ.

Deihl's Objection at 2 (emphasis and paragraph break added).  It is well established in our circuit that "[o]nly those objections that are specific are entitled to a de novo review under the statute [the Magistrates Act, 28 U.S.C. § 636]."  *Westbrook v. O'Brien*, No. 1:07-cv-937, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (holding that a district court need not provide de novo review of an R&R where the objections are frivolous, conclusory, or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider")), *recon. denied*, 2007 WL 4327377 (W.D. Mich. Dec. 10, 2007).[3]  A party does not state a "specific" objection by

---

[3]

*Accord Doyle v. Jones*, Nos. 1:06-cv-628 and 1:06-cv-630, 2007 WL 4052032, *1 (W.D. Mich. Nov. 15, 2007) (Wendell Miles, J.);

*US v. Jones*, No. 3:06-crim-149, 2007 WL 4591915, *10 n.5 (E.D. Tenn. Dec. 14, 2007) (C. Clifford Shirley, U.S.M.J.) ("The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclus[ory], or general.");

merely incorporating by reference the arguments made in prior briefs, by asserting that he has carried his burden on the point in question, or by complaining that the agency or the magistrate judge "should have" found his arguments persuasive.

The only part of Deihl's first objection that is arguably specific enough to warrant *de novo* review is his argument that his claims about the degree of physical limitation caused by his conditions were supported by his wife's testimony – testimony which the ALJ did not expressly reject.  For the reasons stated by the Magistrate Judge, *see* R&R at 12-14 and 15-16, the ALJ reasonably evaluated and weighed the medical evidence, and the evidence on record permitted the ALJ to discount Deihl's subjective complaints about the degree of pain and physical limitation imposed by his conditions.  For those same reasons, the evidence permitted the ALJ to discount Deihl's wife's subjective testimony on those issues as not credible, particularly because he could reasonably conclude that it was not supported by the weight of the medical evidence and opinion.

"A . . . court may not review a determination of credibility.  It is up to the ALJ, as the fact finder, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 537 (6th Cir. 2002) (Guy & Batchelder, JJ., & Quist, D.J.) (citing *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).  More specifically, the ALJ was not obligated to credit or discuss the testimony of Deihl's wife in the face of contrary substantial

_____

*Bell v. Willis*, No. 1:07-cv-212, 2007 WL 4338135, n.4 (E.D. Tenn. Dec. 10, 2007) (Harry S. Mattice, Jr., J.) (same);

*US v. Corona*, No. 3:05-crim-148, 2008 WL 114989, *10 n.3 (E.D. Tenn. Jan. 10, 2008) (Thomas W. Phillips, J.) (same);

*Rosenbaum v. Astrue, Comm'r of Soc. Sec.*, No. 3:07-cv-32, 2008 WL 80149, *7 n.2 (E.D. Tenn. Jan. 7, 2008) (Thomas A. Varlan, J.) (same).

evidence introduced by the Commissioner about the likely severity and non-disabling effect of Deihl's pain and limitations.  As our Circuit has explained,

> While an [ALJ] must consider the claimant's subjective evidence of pain and supporting evidence by a spouse, the judge is not required to credit such evidence if the objective medical evidence in the record does not support a finding of pain so severe and pervasive as to render the claimant incapable of engaging in any substantial gainful activity.

*Edwards v. Heckler*, No. 84-3223, 762 F.2d 1007, 1985 WL 13067, *1 (6th Cir. Mar. 5, 1985) (per curiam).

Following this principle, our Circuit has repeatedly affirmed denials of Social Security disability benefits that were based on the ALJ's decision to reject or accord little weight to subjective testimony by the claimant's family members about the degree of the claimant's pain and the functional limitations the pain seemed to cause.  *See, e.g., Roby*, 48 F. App'x at 537 ("Roby argues that the ALJ incorrectly determined that his and his wife's testimony regarding his limitations, including such things as dizziness and the need to kneel, was overstated . . . .  * * * [T]he ALJ's findings are supported by substantial evidence in the record.  The ALJ considered Roby's testimony concerning his limitations in light of the medical evidence as well as other evidence that Roby drives a car, mows his lawn, and regularly goes fishing."); *Malone v. Comm'r of Soc. Sec.*, No. 94-6545, 69 F.3d 537, 1995 WL 641280, *2 (6th Cir. Oct. 31, 1995) (noting with approval, "The district court also found that the [ALJ] could have found that the testimony given by Malone's ex-husband and son were not supported by the objective medical evidence, and that Malone's son's testimony was inconsistent with Malone's own reports . . . concerning her daily activities."); *Luteyn v. Comm'r of Soc. Sec.*, No. 4:06-cv-92, – F. Supp.2d –, –, 2007 WL 4616699, n.9 (W.D. Mich. Nov. 1, 2007) (Maloney, J.) ("[I]f the ALJ had heard the testimony of Luteyn's

6

girlfriend/fiancee, he would not have been obligated to credit her testimony in the absence of corroborating objective medical evidence.") (citing, *inter alia*, *Colwell v. Chater*, 98 F.3d 1341, 1996 WL 557773, *4 (6th Cir. Sept. 30, 1996) ("[T]he Commissioner must give appropriate weight to lay testimony that is supported by the objective medical evidence. * * * Here, however, the lay testimony, in the form of letters submitted by Colwell's family and friends, is not supported by the objective medical evidence.  Accordingly, the ALJ did not err in refusing to credit this testimony . . . .").[4][5]  On this authority, the court overrules the only part of Deihl's first objection that is

---

[4]

*Accord Pallas v. Astrue*, 246 F. App'x 426 (9th Cir. 2007) ("[T]he ALJ took into account [wife] Mrs. Pallas's report to the extent that it was consistent with the medical reports in the record, but rejected her testimony to the extent that it did not comport with the medical evidence.  The ALJ's credibility determination was supported by the record, because the opinions of Drs. Barrett and Oakley contradicted Mrs. Pallas's testimony that her husband could not bend, twist, or reach. We therefore conclude that the ALJ properly discounted Mrs. Pallas's testimony as to some of her husband's limitations.") (citations omitted);

*McCloud v. Barnhart*, 166 F. App'x 410, 417 (11th Cir. 2006) (any error in ALJ's exclusion of testimony of claimant's husband was harmless; the ALJ reasonably concluded that the husband's testimony was unnecessary because it lacked credibility as contrary to the medical evidence);

*Nolan v. Comm'r of Soc. Sec.*, 154 F. App'x 640, 641-42 (9th Cir. 2005) (ALJ did not err in rejecting testimony of claimant, his wife, and other lay witnesses, as to level of pain, as the stated level of pain was not corroborated by objective medical evidence, psychologists' opinions, his daily activities, and his behavior at the hearing);

*Wheeler v. Apfel*, 224 F.3d 891 (8th Cir. 2000);

*Craig v. Chater*, 943 F. Supp. 1184, 1190 (W.D. Mo. 1996) ("Plaintiff's wife testified on his behalf regarding the duration, frequency, and intensity of his pain and other subjective complaints. * * * The ALJ . . . found it not credible because it was inconsistent with the medical evidence, plaintiff's minimal medical treatment, and the reports of treating and examining physicians.").

[5]

*Contrast Falk v. Comm'r of Soc. Sec.*, 282 F. Supp.2d 1206, 1217 (D. Kan. 2003) (holding that ALJ improperly discredited testimony of claimant's husband about her daily limitations and his perception of her limitations, as his testimony *was* supported by objective medical evidence).

sufficiently specific to merit review.  The court relies on the R&R's listing of instances where the objective medical evidence could reasonably be read *not* to corroborate Deihl's or his wife's subjective testimony, *see* R&R at 14 (discussing Deihl's allegedly disabling "temper problem", back pain, and pulmonary impairment).

Deihl next argues that the ALJ improperly evaluated the medical evidence, especially his treating physician's opinion about the limitations that Deihl's pain imposed on his ability to work a full work-day.  Deihl's second objection to the R&R states, in its entirety:

> The ALJ rejected the treating orthopedist[']s opinions that limited Plaintiff's ability to perform work was impaired by pain [sic] in spite of records showing complaints about the pain and the doctor's treatment of it.  The other work[-]preclusive limitation was the Plaintiff's need to take 2-3 unscheduled breaks for 15 minutes each during the work day. [The ALJ stated, "]This opinion is not explained by Dr. Thomas' reports or supported by the record as a whole.  Therefore, the undersigned rejects this opinion.["] (AR 17) The doctor explained his opinion by his treatment notes which contain repeated visits, examinations and medications and physical therapies for pain.
>
> Even the Administrative Law Judge found that the Plaintiff's impairments could reasonably be expected to produce the pain, but only by rejecting the treating physician's opinion and Plaintiff's testimony, could he justify an unfavorable opinion.   The treating orthopedist's opinions of limitations are not overly comprehensive and are supported by the MER [Medical Evaluation Report?] – both his and Family Health Center of Battle Creek's records.  The ALJ overestimated the Plaintiff's RFC capacity [sic] because he failed to accord controlling weight to the opinion of the treating specialist physician and he failed to thereafter analyze it in accordance with 20 C.F.R. § 404.1527(d) and 20 C.F.R. § 416.927(d).  *See also* Social Security Ruling 96-2p and *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir. 2004).

Deihl's Objection at 2-3 (paragraph break added).

It is true that the opinions of treating physicians are "[g]enerally . . . given substantial, if not controlling, deference."  *Vance v. Comm'r of Soc. Sec.*, No. 07-5793, – F. App'x –, –, 2008 WL 162942, *3 (6th Cir. Jan. 15, 2008) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th

Cir. 2004)); *see also Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (Griffin, J.) (referring to "the mandatory deference accorded to treating physicians in Social Security cases").

Indeed, if a treating source's opinion is uncontradicted, it must be given complete deference. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (citing *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)); *see, e.g., Martin v. Comm'r of Soc. Sec.*, 61 F. App'x 191, 199-201 (6th Cir.) (opinions of treating psychiatrist and treating psychologist were entitled to complete deference where they were not contradicted by any expert medical opinion; the ALJ erred by rejecting treating sources' interpretation of claimant's Global Assessment of Functioning ("GAF") scores in favor of the ALJ's own interpretation of the GAF scores and daily-activity logs), *clarified on other grounds*, 82 F. App'x 453 (6th Cir. 2003).

A treating physician's opinion is entitled to such deference, however, "only . . . when supported by objective medical evidence," *Vance*, – F. App'x at –, 2008 WL 162942 at *3 (quoting *Warner*, 375 F.3d at 390), and it may be rejected in whole or in part when it contradicts substantial objective medical evidence in the record.  *See, e.g., Sullenger v. Comm'r of Soc. Sec.*, No. 07-5161, – F. App'x –, –, 2007 WL 4201273, *6 (6th Cir. Nov. 28, 2007) (ALJ did not err in giving limited weight to treating physician's opinion about physical limitations of claimant who injured her back in December 1992, because it was contradicted by fact that he had never placed limitations on her activities in three years of treating her, by the contrary assessment of three examining physicians, and by two 1993 MRIs, a 1999 CT scan, and a 1999 EMG/nerve-conduction study).  On this score, the court is obligated to follow the Social Security regulation entitled "Treatment relationship," which explains,

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed,

9

longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.

When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section [length and treatment relationship, frequency of examination, and nature and extent of treatment relationship], as well as the factors in paragraphs (d)(3) through (d)(6) of this section [supportability by medical evidence - especially laboratory findings and medical signs, consistency with the record as a whole, specialization, and other factors] in determining the weight to give the opinion. * * *

20 C.F.R. § 404.1527(d)(2) (paragraph breaks added) (emphasis added).

As noted by the magistrate judge, R&R at 15-16, the ALJ did not err in refusing to credit orthopaedist Dr. Thomas's opinion that Deihl's pain and other symptoms would cause him to need two to three unscheduled 15-minute breaks during each workday, because Dr. Thomas's *contemporaneous* treatment notes do not even mention such a limitation, let alone substantiate it. *See Anderson v. Comm'r of Soc. Sec.*, 195 F. App'x 366, 370 (6th Cir. 2006) (approving ALJ's decision, which credited consulting sources' opinions in concluding that claimant retained RFC for "full range of medium level work" instead of treating physician's opinion, because "the doctor's overall treatment notes did not support and were not consistent with his conclusory assertion that [the claimant] was disabled."); *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 663, 666-67 (6th Cir. 2004) (ALJ was not obligated to give weight to treating physician's opinion that claimant suffering from degenerative disc disease of the lumbar spine, obesity, hypertension, and major depressive disorder could nonetheless occasionally lift ten pounds, frequently lift five pounds, stand for less

than an hour per day, and sit or stand only up to fifteen minutes at a time; the physician's treatment records did not support such severe limitations, and his treatment notes did not contain those restrictions); *Perkins v. Apfel*, 14 F. App'x 593, 599 (6th Cir. 2001) (ALJ properly rejected treating physician's opinion that claimant was disabled because it was "not supported by Dr. Perkerson's own treatment notes and inconsistent with the other medical evidence showing that Perkins had recovered substantially from his neck and right knee surgeries").[6]

    As for Dr. Thomas's opinion that Deihl's symptoms would "constantly" interfere with his

---

[6]

    *See also Thompson v. Astrue*, No. 07-cv-112, 2008 WL 89954, *3 (E.D. Ky. Jan. 8, 2008) (Wilhoit, J.) (affirming ALJ's denial of disability benefits and upholding ALJ's decision not to re-contact treating physician where the latter's "assessment of extreme functional impairment is not supported by his own objective findings *as reflected in his treatment notes*") (emphasis added);

    *Stephens v. Astrue*, No. 07-cv-188, 2008 WL 80210, *3 (E.D. Ky. Jan. 4, 2008) (Wilhoit, J.) (treating physician "Dr. Majumdar suggested extreme physical limitations which would essentially preclude any type of gainful employment. Yet, *his own treatment notes do not support such limitations*. Moreover, Dr. Majumdar's opinion . . . is inconsistent with the findings of three consultative examiners . . . .") (emphasis added, record citations omitted);

    *Hamlin v. Comm'r of Soc. Sec.*, No. 05-cv-10293, 2006 WL 3694612, *4 (E.D. Mich. Dec. 7, 2006) (Lawson, J.) ("[T]he ALJ gave good reasons for rejecting [treating physician] Dr. Decker's conclusion that the plaintiff 'would not even be able to complete sedentary work on a regular full-time basis.' The ALJ found that Dr. Decker never tied this conclusion to objective medical findings, he simply repeated the plaintiff's subjective complaints, *Dr. Decker's treatment notes do not support the conclusion*, and the plaintiff had not seen Dr. Decker for over a year before the doctor authored his disability letter . . . .") (emphasis added, record citations omitted);

    *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp.2d 954, 960 (N.D. Ohio 2003) (Baughmann, M.J.) ("A reasonable person could conclude from Dr. Trump's treatment notes that Wines had a serious fibromyalgia condition that existed at a certain controlled level with periodic flare-ups. The condition as manifested in those notes, did not justify the extreme limitations on Wines's work-related capabilities imposed by Dr. Trump's assessment.");

    *Accord Markle v. Barnhart*, 219 F. Supp.2d 367 (W.D.N.Y. 2002) (ALJ correctly disregarded treating physician's assessment of claimant's RFC, because physician's opinions regarding claimant's ability to sit, stand or walk and regarding the side effects of medications were not substantiated by his treatment notes or supported by the record).

attention and concentration, even assuming *arguendo* that the medical evidence in the record could support that opinion, Deihl fails to show how any contrary finding by the ALJ affected the decision. This is because the ALJ reached his ultimate disability decision based on the vocational expert ("VE")'s testimony, and the VE, in turn, rendered his opinion as to which jobs Deihl could perform *based on the ALJ's instruction to assume that Deihl needed 2-3 unscheduled 15-minute breaks during each workday. See Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 412 (6th Cir. 2004) ("Lusk maintains that the ALJ did not give the appropriate deference to the assessment of his treating physician . . . .  This argument lacks merit because the ALJ incorporated the limitations imposed by Dr. Andreas, Lusk's treating physician, into the second hypothetical he gave the VE.").

Because the ALJ's hypothetical "accurately" incorporated Deihl's alleged need to take such unscheduled breaks, Deihl cannot use the dispute over whether he actually needed such breaks as a basis for challenging the ALJ's disability determination.  *See generally Colvin v. Barnhart*, 475 F.3d 727, 732 (6th Cir. 2007) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.") (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)).

For these reasons, the court will reject Deihl's second objection to the R&R.

Finally, Deihl argues that the ALJ improperly assessed his non-exertional limitations. Deihl's third objection to the R&R states, in its entirety,

> The "moderate" loss of essential mental capacities to perform work [– namely,] 11. Ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 12. Ability to interact appropriately with the general public. 14. Ability to accept instructions and respond appropriately to criticism from supervisors; and 17.  Ability to respond appropriately to changes

12

in the work setting.) (AR 184-189) [-] is equal to [a] 50% or significant loss of ability to mentally function in the workplace. *Bankston v[.] Commissioner*, 127 F. Supp.2d 820 (E.Dist. MI 2000).

The State Agency CE [consultative examiner?], Dr. Pai's, mental RFC [assessment] opined [that Deihl had] moderate disability in several categories necessary for competitive work detailed above. (AR 185-189)  As such, the impairment equals disability.  POMS § DI 25020.010A3[.]

Deihl's Objection at 3 (paragraph break added).

This objection lacks merit for the reason stated by the magistrate judge.  Namely, Dr. Pai's January 27, 2004 report found no significant limitation in fourteen of the twenty areas evaluated, and only moderate limitation in the six categories emphasized by Deihl.  Significantly, Deihl musters no regulatory or case-law support for the notion that the ALJ was obligated to consider such moderate, partial limitation equivalent to total disability[7] – particularly when the rest of the medical

---

[7]

In *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563 (6th Cir. 2007), for example, our Circuit held that the ALJ erred, *inter alia*, by allowing a VE to formulate his assessment of the claimant's RFC based on the mistaken belief that claimant was "mildly" rather than "moderately" restricted in his ability to interact appropriately with the general public.  The panel held that this and other related errors required vacatur and remand.

To comply with the *Lancaster* panel's opinion, the ALJ on remand would have to obtain an RFC assessment from the VE that was based on a hypothetical accurately incorporating the claimant's impairments, including a "moderate" restriction on Lancaster's ability to interact appropriately with the general public.  Significantly, however, the panel left open the possibility that the ALJ on remand could reasonably determine that the claimant was not disabled, even after an analysis that recognized the claimant had the aforementioned "moderate" limitation.

*Lancaster* is not on all fours with the instant case, of course, because Lancaster's physician found him to be "moderately" limited in *one* area of mental functioning, while Dr. Pau found Deihl to be "moderately" limited in *six* areas of mental functioning.  But *Lancaster* is consistent with the general point that "moderate" limitation in mental functions that are relevant to the ability to work do not necessarily compel a finding of disability; rather, the ALJ must examine the entire record.  Once the ALJ does so, this court is permitted to inquire only whether substantial evidence supports the ALJ's conclusion that a claimant who is "moderately" limited in some areas of mental functioning is nonetheless still able to perform some gainful work – and here substantial evidence does support that conclusion.

evidence in the record suggested an RFC sufficient to continue doing *some* gainful work.

## ORDER

Accordingly, having reviewed Deihl's petition, the parties' briefs, the R&R, and the plaintiff's objections to the R&R, the court hereby **OVERRULES** the plaintiff's objection and **ADOPTS** the R&R.

The Commissioner's denial of disability benefits is **AFFIRMED**.

This case is **TERMINATED.**

**This order is final and appealable.**

**IT IS SO ORDERED this 12th day of February 2008.**

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge

---

*Cf. also Benton v. Comm'r of Soc. Sec.*, 511 F. Supp.2d 842 (E.D. Mich. 2007) (Victoria Roberts, J.) (remanding for ALJ to determine whether jobs existed that were suitable in light of claimant's "moderate" limitations in "concentration, persistence, or pace", i.e., leaving open the possibility that claimant might be able to do some jobs notwithstanding those moderate limitations).